# THOMAS L. ADKINS

*vs.*

# LEVIN HASTINGS, Trading as Hastings & Company.

*Bills of Exception—Time of Submission for Signing—Rule of Court—Evidence—Entries in Account Books—Refreshing Memory—Action for Price of Necessaries— Husband and Wife.*

Where a rule of court required the bills of exception to be "prepared and submitted" to the court within a certain number of days after verdict "unless otherwise expressly allowed by" the court, an order extending "the time for filing" the bills of exception until a named date was satisfied by their submission to the judge on that date, though they were not signed by him or filed with the clerk until later.                                    p. 458

Where an order extending the time for filing bills of exception was signed by the judge in proper time and was with his consent left with him for filing, but was through inadvertence not filed until after the period of extension named therein, he could properly order its filing *nunc pro tunc* as of the date on which it was signed.                                        p. 459

A witness who either made sales of goods or was present when they were made, and testifies that the book entries of these sales were made at the time of the sales, may be presumed to have known that the entries were correct when made, and may refresh his recollection by reading them.            p. 460

A witness for plaintiff having testified that he made practically all of certain sales to defendant, and made book entries of the sales coincidently with the sales, and further stated that "I know I delivered the stuff to" defendant's wife, it will be presumed that the entries are correct and accurate, nothing being brought out on cross-examination to justify a contrary presumption, and the book in which the entries were made was properly admitted in evidence.                    p. 460

Syllabus.

That, in entering sales in an account book, the items charged were frequently described as "goods," "groceries," "meat," "apples," and the like, without giving the quantity or specifying the kind of goods with particularity, does not render the entries inadmissible. p. 461

In an action on an account for goods furnished defendant's wife, *held* that defendant could not object to the admissibility of entries of the sales in plaintiff's account book, as being indefinite as regards the quantity and kind of goods sold, similar entries having been made in a book in the possession of defendant's wife, which was not admitted in evidence by reason of defendant's objection. p. 461

In an action for goods sold, it was proper to exclude a question, sought to be asked on cross-examination of plaintiff's clerk, testifying as to the sales to defendant, as to what was "the rate" of the witness's compensation, the purpose of the question, which was to show that the witness received a commission on sales, and hence was not disinterested, not being disclosed at the time. p. 462

An objection to a prayer granted at plaintiff's request, that it ignores undisputed testimony of plaintiff's own witnesses on certain propositions, in so far as this means that the propositions contained in the prayer are without evidence to support them, cannot be considered in the absence of special exceptions in writing submitted to the trial court. p. 463

Defendant cannot object that a granted prayer was unduly complicated, if this characteristic resulted from the prayer placing on plaintiff unnecessary burdens. p. 463

A prayer instructing the jury that if they find certain facts, "the defendant is legally responsible to the plaintiff for the price of the goods sold to his wife," and that "their verdict must be for the value of the goods so sold and delivered," in effect fixes the price charged as the measure of damages, provided the jury find such price to be the value of the goods. p. 463

It is presumed that, when people go to a store to buy goods, they ask the price, and that the price charged is the price at which the goods are sold, where the books are so kept as to be admissible in evidence. p. 464

The value of an account is *prima facie* the face value.  p. 464

In an action against a husband for necessaries supplied to the wife, a prayer was defective which made the plaintiff's right to recover dependent upon his proving by a preponderance of evidence that defendant refused and failed to support his wife or failed to make adequate provision for her procuring necessaries suitable to her station in life, provided only the jury find that defendant did not authorize his wife to purchase the goods, or plaintiff to charge them to him; this ignoring the implied authority which the jury might have found, from all the circumstances of the case, to be vested in the wife.    p. 464

A prayer which goes to recovery and does not submit to the jury all the circumstances of the case is properly refused.  p. 465

*Decided May 5th, 1921.*

Appeal from the Circuit Court for Wicomico County (PATTISON, C. J., BAILEY and DUER, JJ.).

The parties submitted the following prayers.

*Plaintiff's Prayer.*—The plaintiff prays the court to instruct the jury that if they shall find that the goods, the price of which is sued for, in this case were sold and delivered by the plaintiff to the wife of the defendant upon his credit with the knowledge, consent and authority of the defendant, and that during the course of dealings between the plaintiff and defendant's wife, the goods were charged to the defendant and the itemized bills sent to and received by him, and that he did not object thereto, and that the goods so purchased were necessaries consisting of food and clothing used in the family and by the wife and children and suitable for their station in life; and that the defendant, prior to the purchase of the goods, the price of which is sued for in this case, went to the store of the plaintiff, and in the presence and hearing of the plaintiff, told the plaintiff's clerk and bookkeeper that he wanted them to let his wife have whatever goods she ordered as he didn't know what was needed in the family and

that in pursuance of this general order and direction from the defendant to the plaintiff, the goods, the price of which is sued for in this case, were sold and delivered to the defendant's wife, then the defendant is legally responsible to the plaintiff for the price of the goods sold and delivered to his wife, and their verdict must be for the plaintiff for the value of the goods so sold and delivered.

*Defendant's First Prayer.*—The defendant prays the court to instruct the jury that under the pleadings in this case there is no legally sufficient evidence to entitle the plaintiff to recover.

*Defendant's Second Prayer.*—The defendant prays the court to instruct the jury that if the jury shall find from the evidence in this case that the goods charged in the account upon which this suit is brought were sold and delivered by the plaintiff to the defendant's wife and that the defendant did not authorize his wife to purchase any goods, or any of the goods charged to the defendant's account, and that the defendant did not authorize the plaintiff to charge the goods sold and delivered to him, then the plaintiff is not entitled to recover in this case unless he shall show by a preponderance of the evidence that the defendant refused and failed to support his wife or failed to make adequate provision for her procuring necessaries suitable to the station of life which she occupies and that the goods charged in the account were necessaries and suitable to the station in life occupied by the defendant's wife.

*Defendant's Third Prayer.*—The defendant prays the court to instruct the jury that if the jury find that the plaintiff is entitled to recover in this action, the amount of his recovery should be limited to the reasonable value of the goods, which value the plaintiff must prove.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Thomas H. Lewis, Jr.,* for the appellant.

*Jay Williams* and *Arthur E. Williams,* for the appellee.

ADKINS, J., delivered the opinion of the court.

A motion was filed to dismiss the appeal in this case "because the bills of exception were not prepared and submitted to the *nisi prius* court within twenty days from the rendition of the verdict in this case as provided by the rules of court for the First Judicial Circuit of Maryland, and were not signed by the *nisi prius* court and filed by the appellant in this case within the time allowed by the special order made by the *nisi prius* court in this case, extending the time within which bills of exception could be filed."

The rule referred to requires that:

"The party taking the exception note the same at the time of the ruling made, and thereafter within a reasonable time after the trial, reduce the exception to proper form in conformity to the rules presented by the Court of Appeals for the regulation of appeals, and submit the same to the judge or judges for his or their signature; provided, however, unless otherwise expressly allowed by this court, the bills of exception shall be prepared and submitted to this court within twenty days from the rendition of the verdict."

The verdict was rendered on September 14th, 1920. On October 2nd, 1920, time for filing bills of exception was extended to the first day of November, 1920.

It appears by the affidavits of Thomas H. Lewis, Jr., attorney for appellant, and his stenographer, Ida Lee Taylor, the bills of exception were prepared and delivered at the office of JUDGE BAILEY, one of the judges of said court, on the first day of November, 1920, and on the same day a copy of them was left with the attorneys of the appellees. This is not denied, and it appears from the record that the bills of exception were signed on the 2nd day of November, 1920, but they do not appear to have been filed in the clerk's office until November 15th, 1920. It is not apparent to us why the delivery of them to JUDGE BAILEY, on November 1st, 1920.

was not a sufficient compliance with the rule and the order of
October 2nd, as the requirement of the rule is submission of
the bills of exception to the judge within the time provided,
and not necessarily that they be filed in the clerk's office by
that date; and the order of October 2nd, extending the time
for filing until November 1st, was in effect an extension of
time for submission to the judge.                     .

But even if this were not so, it appears from the affidavit
of JUDGE BAILEY that, on October 29th, 1920, he signed an-
other order extending the time for filing bills of exception to
the 15th day of November, 1920, which order was with his
consent left with him for filing, but through inadvertence on
his part was not filed by him with the clerk of the court, but
was retained by the Judge in his chambers until the 2nd
day of February, 1921, when by an order of that date it was
filed by the clerk *nunc pro tunc* as of the 29th day of Octo-
ber, 1920. The motion of *ne recipiatur* as to the orders of
October 29th, 1920, and February 2nd, 1921, and the motion
to dismiss the appeal, are overruled.

This appeal is from a judgment for $396.28 in favor of
the appellee against the appellant on an open account for
merchandise alleged to have been sold by appellee to the wife
of appellant at his request.

There are four bills of exception, three are exceptions to
rulings of the trial court on evidence, and one on prayers.

The first exception is to permitting the clerk of appellee
who kept the books of the business to read from the book, in
which he testified he made the entries in the regular course
of business at the times the sales were made, items of the ac-
count. Before reading these items, the witness testified that
a few of the goods charged were delivered to appellant him-
self but the bulk of them to the wife; that the goods were all
such as were ordinarily used in families in like circumstances
with defendant, and that he had requested witness to give
credit to his wife, as he did not know what the family needed.

The following questions and answers preceded the reading
of the items: "Q. How do you keep a record of these sales?

A. Sometimes they were put down by items and sometimes in a whole. Q. You mean you kept a book account of it? A. Yes, sir. Q. Were those entries made by you at the time of sale A. Yes, sir. Q. Did you have the book? A. Yes, sir; there it is. Q. Is this the book in which you made the entries? A. Yes, sir; that is the book. Q. And these entries in the book were made by you in every instance when the sales were made? A. Yes, sir. Q. You were present when the sales were made? A. I done it. Q. You sold the goods yourself? A. Most of the time. Q. Is this book you refer to the book you used in the regular course of your business? A. Yes, sir."

Now it will appear from the above that the witness either made the sales himself or was present when they were made, as he says he made most of the sales and that all the entries were made by him at the times of sales, so that he must at least have been present. In these circumstances it is presumed that he knew the entries were correct at the time they were made, and the ruling of the court in permitting him to read the items from the book was in effect deciding that he could refresh his recollection by referring to the book. The law on this subject is too familiar to require the citation of authority. We find no error in this ruling.

In any event this exception is unimportant if the book itself was properly admitted in evidence, as was afterwards done over the objection of appellant. This is the ground for the second exception.

It is objected that the witness did not testify *in so many words* that the entries are correct and accurate, and that he made the entries in accordance with the truth of the matters as he knew them to exist at the time he made the entries; and further that it does not appear that the witness had personal knowledge of all the sales.

In view of the testimony above quoted we do not think any of these objections are valid. When the witness testified he made practically *all* the sales and made all the entries coincident with the sales, *that* fixed his presence and knowledge

of the transactions, especially as he said explicitly on cross-examination "I know I delivered the stuff to her," and it will not be presumed that he made false or inaccurate entries when an opportunity was given to test him on cross-examination and nothing was brought out to justify such a presumption. "When the alternative is as to whether the act is rightful or wrongful, the act being one that may be either, according to its environments, and there is nothing to show that it is wrongful, the natural and the general presumption founded on observation and experience, is that it was rightful." *Brewer v. Bowersox,* 92 Md. 574.

In what we have said above, we do not mean to decide that under modern conditions of doing business it would now be required that a bookkeeper who made the entries must have had actual knowledge of the facts which he recorded before his books could be admitted in evidence, where the entries were made contemporaneously and in due course of business. This question was expressly reserved in *Marine Bank* v. *Stirling,* 115 Md. 90. A strict enforcement of such a requirement would make impracticable the proof of most accounts of large mercantile establishments.

It is also objected that the book should not have been admitted because it does not show with sufficient particularity with what the defendant is being charged; that the entries are not explicit enough to constitute an "account." This objection is based on the fact that the items charged are frequently described as "goods," "groceries," "meat," "apples," and the like, without giving the quantity or specifying the kind of goods with particularity. But "the mere fact that the measure, weight, and quantity are not given in connection with the items will not render the account inadmissible." 22 *Corpus Juris.,* sec. 1049; *Hooper* v. *Taylor,* 39 Maine, 224; *Pratt* v. *White,* 132 Mass. 477; *Jones, Evidence* (2nd Ed.), sec. 570. Besides the witness testified that the wife of appellant had a book in which the sales to her were entered, so that she also had an account of them. This book was produced by

appellee but was not admitted in evidence by reason of objection by appellant. We find no error in this ruling.

The third exception is to the refusal of the court, on objection, to permit the witness under cross-examination by appellant's attorney to answer the question: "What is the rate of your compensation?" We find no reversible error here. This is the same witness who made and testified to the entries in the book. The four questions and answers immediately preceding the questions objected to were as follows: "Q. Mr. Hastings, what is your relation to this business of your father's? Isn't he your father? A. Yes, sir. Q. What is your relation to his business? A. Only the clerk. Q. How long have you been clerk there? A. Twenty-five years. Q. How are you paid? A. Paid with money." The purpose of the question to which the objection was sustained, as disclosed in his brief and oral argument by appellant's attorney, was to discover whether the clerk was paid a commission on sales and to that extent interested in the business, with the view of making the contention that he had such an interest in the business as to exclude from evidence the book containing the entries made by him; or, if that argument should fail, to show that he was an interested witness and thus affect the weight of his testimony. But the question itself does not disclose its purpose. The court could not tell what was meant by the "rate of compensation." It might just as well have applied to the amount paid per year or per month. The record does not show that either the purpose was made known to the court or that there was any offer to prove that the witness was interested in the business in any other way than as a clerk working on a regular salary. There is nothing in the form of the question to show that it was admissible for any purpose.

The fourth and last exception is to the ruling of the court on the prayers, which will be set out in full by the reporter.

The court granted plaintiff's prayer and refused the three prayers offered by the defendant. So far as the first and second objections of defendant to plaintiff's prayer are con-

cerned, viz: that it ignores undisputed testimony of plaintiff's
own witnesses on certain propositions, if the objection is
meant to be that the propositions in question are without
evidence to support them, such objections on appeal cannot
be considered in the absence of special exceptions in writing
submitted to the trial court; and the record discloses no such
exceptions. We do not mean to say, however, that under the
facts of this case the prayer was open to such objections even
if special exceptions had been filed.

The third objection is that the prayer does not correctly
state the propositions of law involved; that it incorrectly fixes
the measure of damages; that as a whole the prayer is com-
plicated, involved, indistinct and uncertain.

As to the prayer being complicated, if it is open to such a
criticism, it is because it imposes upon the plaintiff unneces-
sary burdens, and such a defect is not one to which the de-
fendant could object. It requires the jury to find not only
that the articles sold were necessaries, and that as to such
necessaries the wife had implied authority, but that "the de-
fendant, prior to the purchase of the goods, the price of which
is sued for in this case, went to the store of the plaintiff, and
in the presence and hearing of the plaintiff, told the plain-
tiff's clerk and bookkeeper that he wanted them to let his
wife have whatever goods she ordered as he didn't know what
was needed in the family, and that in pursuance of this gen-
eral order and direction from the defendant to the plaintiff,
the goods, the price of which is sued for in this case, were
sold and delivered to the defendant's wife."

As to the statement in the prayer that if the jury find the
facts set out in the prayer, "the defendant is legally responsi-
ble to the plaintiff for the *price* of the goods sold and deliv-
ered to his wife," it is to be noted that this expression is fol-
lowed immediately by the words "and their verdict must be
for the plaintiff for the *value* of the *goods* so sold and deliv-
ered." These words serve to qualify those immediately pre-
ceding and fix the prices charged as the measure of damages,
provided the jury find such *prices* to be the *value* of the

goods. But apart from this it is presumed when people go to a store to buy goods they ask the price of them, and that the price charged is the price at which the goods were sold, where the books are so kept as to be admissible in evidence.

The value of an account is *prima facie* the face value. *Sedgwick on Damages* (9th Ed.), Vol. 1, p. 521, sec. 258. Besides in this case the uncontradicted testimony is that the wife of the defendant had a book in which the entries of purchases were made, and must have known the prices charged at or about the time of the sales. We find no error in the granting of this prayer. It follows that defendant's third prayer was properly refused.

His first prayer asked for an instructed verdict, and could not have been granted without ignoring the evidence of plaintiff and his clerk.

Defendant relies upon the case of *Jones* v. *Gutman,* 88 Md. 355, to support his second prayer. In that case it was held that a prayer which sought to have the jury instructed "that the burden is on the plaintiff to show that the defendant refused to support his wife or failed to make her an adequate allowance," should have been granted. The difficulty about defendant's second prayer in the case at bar is, that it makes the right of plaintiff to recover to depend upon his proving by a preponderance of evidence that the defendant refused and failed to support his wife or failed to make adequate provision for her procuring necessaries suitable to her station in life, and that the goods charged in the account were necessaries and suitable; provided *only* the jury find that the defendant did not authorize his wife to purchase the goods, or plaintiff to charge them to him. This ignores the implied authority which the jury might have found from all the circumstances of the case. "If the parties live together and it be not shown that the husband has failed to provide her with a suitable maintenance and support, the presumption of her authority is one of fact to be finally determined upon all the circumstances of the case. The husband can then rebut the presumption that arises from the fact of cohabitation by show-

ing that the purchase was made without his authority, real or apparent; and without his subsequent assent." *Jones* v. *Gutman, supra.*

Both plaintiff and his clerk testified that statements were mailed to defendant from time to time. Plaintiff also said his name and address were on the outside of the envelopes; that he had also sent one or two statements by the wife; that he didn't know whether they were delivered or not, but they weren't returned to him.

As the prayer goes to recovery and does not submit to the jury all the circumstances of the case, it was properly refused.

Finding no error in any of the rulings of the trial court, the judgment will be affirmed.

*Judgment affirmed, with costs to appellee.*