TERETHA McNEIL BAKER *v.* STATE OF MARYLAND

[No. 785, September Term, 1976.]

*Decided April 12, 1977.*

The cause was argued before MOYLAN, DAVIDSON and MASON, JJ.

*Lee N. Sachs, Assigned Public Defender,* for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Timothy Doory, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

This appeal addresses the intriguing question of what latitude a judge should permit counsel when a witness takes the stand and says, "I don't remember." What are the available keys that may unlock the testimonial treasure vaults of the subconscious? What are the brush strokes that may be employed "to retouch the fading daguerreotype of memory?" [1] The subject is that of Present Recollection Revived. [2]

The appellant, Teretha McNeil Baker, was convicted by a Baltimore City jury of both murder in the first degree and robbery. Although she raises two appellate contentions, the only one which we find it necessary to consider is her claim that the trial judge erroneously refused her the opportunity to refresh the present recollection of a police witness by showing him a report written by a fellow officer.

The ultimate source of most of the evidence implicating the appellant was the robbery and murder victim himself, Gaither Martin, a now-dead declarant who spoke to the jury through the hearsay conduit of Officer Bolton. [3] When Officer Bolton arrived at the crime scene, the victim told him that he had "picked these three ladies up . . . at the New Deal Bar"; that when he took them to their stated destination, a man walked up to the car and pulled him out;

---

[1]. Gardner, *The Perception and Memory of Witnesses,* 18 Cornell L. Q. 390, 401 (1933).

[2]. Frequently and alternatively referred to as Present Recollection Refreshed.

[3]. The exception to the Hearsay Rule urged by the State and utilized by the court to make the out-of-court assertion admissible was the "excited utterance" exception and not the "dying declaration" exception. We are not here considering the admissibility of this hearsay, but are rather assuming it to have been admissible.

that "the other three got out and proceeded to kick him and beat him." It was the assertion made by the victim to the officer that established that his money, wallet and keys had been taken. The critical impasse, for present purposes, occurred when the officer was questioned, on cross-examination, about what happened en route to the hospital. The officer had received a call from Officer Hucke, of the Western District, apparently to the effect that a suspect had been picked up. Before proceeding to the hospital, Officer Bolton took the victim to the place where Officer Hucke was holding the appellant. The appellant, as part of this cross-examination, sought to elicit from the officer the fact that the crime victim confronted the appellant and stated that the appellant was not one of those persons who had attacked and robbed him. To stimulate the present memory of Officer Bolton, appellant's counsel attempted to show him the police report relating to that confrontation and prepared by Officer Hucke.

The record establishes loudly and clearly that appellant's counsel sought to use the report primarily to refresh the recollection of Officer Bolton and that he was consistently and effectively thwarted in that attempt:

"BY MR. HARLAN:

Q. Do you have the report filed by Officer Hucke and Officer Saclolo or Saclolo?

A. Right, I have copies.

Q. Okay.

MR. DOORY: I would object to that, Your Honor.

THE COURT: I will sustain the objection. This is not his report.

BY MR. HARLAN:

Q. Can you look at this report and refresh your recollection as to whether or not you ever had the victim in a confrontation with Mrs. Baker?

MR. DOORY: Objection, Your Honor.

MR. HARLAN: He can refresh —

THE COURT: Well, he can refresh his recollection as to his personal knowledge. That's all right.

A. That is what I am saying, I don't know who it was that we confronted really.

BY MR. HARLAN:

Q. All right. Would you consult your report and maybe it will refresh your recollection.

THE COURT: I think the response is he doesn't know who —

MR. HARLAN: He can refresh his recollection if he looks at the report.

THE COURT: He can't refresh his recollection from someone else's report, Mr. Harlan.

MR. HARLAN: I would object, Your Honor. Absolutely he can.

THE COURT: You might object, but —

MR. HARLAN: You are not going to permit the officer to refresh his recollection from the police report?

THE COURT: No. It is not his report.

. . . .

MR. HARLAN: Your Honor, I think I am absolutely within my rights to have a police officer read a report which mentions his name in it to see if it refreshes his recollection. If it doesn't refresh his recollection, then fine.

THE COURT: Well, he did that.

MR. HARLAN: You have not afforded him the opportunity to do that yet, Your Honor.

THE COURT: He says he does not know who it was before. So, he can't refresh his recollection if he does not know simply because someone else put some name in there.

MR. HARLAN: He has to read it to see if it refreshes his recollection, Your Honor.

THE COURT: We are reading from a report made by two other officers which is not the personal knowledge of this officer.

MR. HARLAN: I don't want him to read from that report. I want him to read it and see if it refreshes his recollection."

On so critical an issue as possible exculpation from the very lips of the crime victim, appellant was entitled to try to refresh the memory of the key police witness. She was erroneously and prejudicially denied that opportunity. The reason for the error is transparent. Because they both arise from the common seedbed of failed memory and because of their hauntingly parallel verbal rhythms and grammatical structures, there is a beguiling temptation to overanalogize Present Recollection Revived and Past Recollection Recorded. It is a temptation, however, that must be resisted. The trial judge in this case erroneously measured the legitimacy of the effort to revive present recollection against the more rigorous standards for the admissibility of a recordation of past memory.

It is, of course, hornbook law that when a party seeks to introduce a record of past recollection, he must establish 1) that the record was made by or adopted by the witness at a time when the witness did have a recollection of the event and 2) that the witness can presently vouch for the fact that when the record was made or adopted by him, he knew that it was accurate. *Hall v. State*, 223 Md. 158, 162 A. 2d 751; *Edwards and Person v. State*, 31 Md. App. 562, 358 A. 2d 590; *Ringgold v. State*, 34 Md. App. 286, 367 A. 2d 35. McCormick, *Law of Evidence* (1st Ed., 1954), describes the criteria, at 15:

"Appropriate safeguarding rules have been developed for this latter kind of memoranda, requiring that they must have been written by the witness or examined and found correct by him, and that they must have been prepared so promptly after the events recorded that these must have been fresh in the mind of the witness when the record

was made or examined and verified by him. We have treated such memoranda separately, as an exception to the hearsay rule."

Had the appellant herein sought to offer the police report as a record. of past recollection on the part of Officer Bolton, it is elementary that she would have had to show, *inter alia*, that the report had either been prepared by Officer Bolton himself or had been read by him and that he can now say that at that time he knew it was correct. Absent such a showing, the trial judge would have been correct in declining to receive it in evidence.

When dealing with an instance of Past Recollection Recorded, the reason for the rigorous standards of admissibility is quite clear. Those standards exist to test the competence of the report or document in question. Since the piece of paper itself, in effect, speaks to the jury, the piece of paper must pass muster in terms of its evidentiary competence.[4]

Not so with Present Recollection Revived! By marked contrast to Past Recollection Recorded, no such testimonial competence is demanded of a mere stimulus to present recollection, for the stimulus itself is never evidence. Notwithstanding the surface similarity between the two phenomena, the difference between them could not be more basic.[5] *It is the difference between evidence and non-*

---

4. All of the tests for such evidentiary competence for a record of past recollection are fully set out and discussed in 3 *Wigmore on Evidence* (Chadbourn Revision, 1970), Ch. 28, Topic V "Testimonial Recollection," §§ 734-755 "Past Recollection Recorded," pp. 77-125; McCormick, *Law of Evidence* (2nd Ed., 1972), Ch. 30 "Records of Past Recollection," pp. 712-716.

It is to be noted, as Professor Chadbourn noted in his 1970 revision of 3 *Wigmore on Evidence*, § 738, n. 5 at 93, Maryland is in the minority position (preferred, however, by Wigmore) that where a proper foundation is laid, a past recollection recorded is admissible without regard to the state of declarant's recollection at the time of trial. *Hall v. State*, 223 Md. 158, 176, 162 A. 2d 751; *Edwards and Person v. State*, 31 Md. App. 562, 568, 358 A. 2d 590.

5. "Under the guidance of Wigmore, we now recognize this as quite a different process. In the one instance, the witness stakes his oath on his present memory; in the other, upon his written recital of things remembered in the past." McCormick, *Law of Evidence* (1st Ed., 1954), p. 15.

*evidence.* Of such mere stimuli or memory-prods, Mc-Cormick says, at 18, "[T]he cardinal rule is that they are not evidence, but only aids in the giving of evidence." When we are dealing with an instance of Present Recollection Revived, the only source of evidence is the testimony of the witness himself. The stimulus may have jogged the witness's dormant memory, but the stimulus itself is not received in evidence. Dean McCormick makes it clear that even when the stimulus is a writing, when the witness "speaks from a memory thus revived, his testimony is what he says, not the writing." *Id.*, at 15. McCormick describes the psychological phenomenon in the following terms:

> "It is abundantly clear from every-day observation that the latent memory of an experience may be revived by an image seen, or a statement read or heard. It is a part of the group of phenomena which the classical psychologists have called the law of association. The recall of any part of a past experience tends to bring with it the other parts that were in the same field of awareness, and a new experience tends to stimulate the recall of other like experiences." *Id.*, at 14.

The psychological community is in full agreement with the legal community in assessing the mental phenomenon. See Cairn, *Law and the Social Sciences* 200 (1935):

> "In permitting a witness to refresh his recollection by consulting a memorandum, the courts are in accord with present psychological knowledge. A distinction is drawn, in the analysis of the memory process, between *recall*, which is the reproduction of what has been learned, and *recognition*, which is recall with a time-factor added, or an awareness that the recall relates to past experience. It is with recognition that the law is principally concerned in permitting a witness to revive his recollection. The psychological evidence is clear that in thus allowing to be brought to mind what has been forgotten, the law is following sound psychological procedure."

And see Hutchins and Slesinger, *Some Observations on the Law of Evidence — Memory*, 41 Harv. L. Rev. 860 (1928).

The catalytic agent or memory stimulator is put aside, once it has worked its psychological magic, and the witness then testifies on the basis of the now-refreshed memory. The opposing party, of course, has the right to inspect the memory aid, be it a writing or otherwise, and even to show it to the jury. This examination, however, is not for the purpose of testing the competence of the memory aid (for competence is immaterial where the thing in question is not evidence) but only to test whether the witness's memory has in truth been refreshed. As McCormick warns, "But the witness must swear that he is genuinely refreshed. . . . And he cannot be allowed to read the writing in the guise of refreshment, as a cloak for getting in evidence an inadmissible document." [6] One of the most thorough reviews of this aspect of evidence law is found in *United States v. Riccardi*, 174 F. 2d 883 (3rd Cir., 1949), where the court said at 888:

"In the case of present recollection revived, the witness, by hypothesis, relates his present recollection, and under oath and subject to cross-examination asserts that it is true; his capacities for memory and perception may be attacked and tested; his determination to tell the truth investigated and revealed; protestations of lack of memory, which escape criticism and indeed constitute a refuge in the situation of past recollection recorded, merely undermine the probative worth of his testimony ." [7]

---

6. McCormick, *Law of Evidence* (2nd Ed., 1972), 19, n. 66.

7. To the same effect, see Morgan, *The Relation between Hearsay and Preserved Memory*, 40 Harv. L. Rev. 712, 717-718 (1927):

"[W]here the witness, by some stimulus, be it memorandum or other device, has his recollection so revived as to be able to testify entirely from present memory . . . the memory of the witness is actually refreshed . . . . He is not asking the tribunal to believe it because he stated it on a former occasion, but because he is now relating it under oath and subject to cross-examination."

In solid accord with both the psychological sciences and the general common law of evidence, Maryland has long established it that even when a writing of some sort is the implement used to stir the embers of cooling memory, the writing need not be that of the forgetful witness himself, need not have been adopted by him, need not have been made contemporaneously with or shortly after the incident in question, and need not even be necessarily accurate. The competence of the writing is not in issue for the writing is not offered as evidence but is only used as a memory aid. *Adkins v. Hastings*, 138 Md. 454, 114 A. 288 (book entries recording sale of goods as a memory aid); *McGuire v. State*, 200 Md. 601, 92 A. 2d 582 (stenographic transcript of tape recording of telephone conversations); *Bulluck v. State*, 219 Md. 67, 148 A. 2d 433 (police officer's notes of statement given by defendant); *Gault v. State*, 231 Md. 78, 188 A. 2d 539 (unsigned transcript of oral confession); *Miller v. State*, 251 Md. 362, 247 A. 2d 530, judgment vacated in part, 408 U. S. 934, 92 S. Ct. 2851, 33 L.Ed.2d 747 (typed but unsigned statement of defendant given to police used to refresh officer's recollection); *Scott v. State*, 1 Md. App. 481, 231 A. 2d 728 (memorandum of sale); *Bull v. Schuberth*, 2 Md. 38 (newspaper); *Hubbard v. State*, 2 Md. App. 364, 234 A. 2d 775 (statement of State's witness given to police); *Askins v. State*, 13 Md. App. 702, 284 A. 2d 626 (State's witness permitted to refresh memory from memorandum of statement he had given to police); *Holloway v. State*, 26 Md. App. 382, 339 A. 2d 319 (police report written by another officer).

When the writing in question is to be utilized simply "to awaken a slumbering recollection of an event" [8] in the mind of the witness, the writing may be a memorandum made by the witness himself, 1) even if it was not made immediately after the event, 2) even if it was not made of firsthand

---

8. *Jewett v. United States*, 15 F. 2d 955, 956 (9th Cir., 1926):

"It is one thing to awaken a slumbering recollection of an event, but quite another to use a memorandum of a recollection, fresh when it was correctly recorded, but presently beyond the power of the witness so to restore that it will exist apart from the record."

knowledge and 3) even if the witness cannot now vouch for the fact that it was accurate when made. It may be a memorandum made by one other than the witness, even if never before read by the witness or vouched for by him. It may be an Associated Press account. It may be a highly selective version of the incident at the hands of a Hemingway or an Eliot. All that is required is that it ignite the flash of accurate recall — that it accomplish the revival which is sought.

McCormick wrote to just such effect:

"[I]t is probable that most courts today when faced with the clear distinction between the two uses of the memoranda, will adhere to the 'classical' view that any memorandum or other object may be used as a stimulus to present memory, without restriction by rule as to authorship, guaranty of correctness, or time of making." [9]

The Texas dean is in good company, for no less eminent an authority than Lord Ellenborough said in *Henry v. Lee*, 2 Chitty 124, 125 (1810):

"If upon looking at *any* document he can so far refresh his memory as to recollect a circumstance, it is sufficient; and it makes no difference that the memorandum is not written by himself, for it is not the memorandum that is the evidence but the recollection of the witness."

Not only may the writing to be used as a memory aid fall short of the rigorous standards of competence required of a record of past recollection, the memory aid itself need not even be a writing. What may it be? It may be anything.[10] It may be a line from Kipling or the dolorous refrain of "The Tennessee Waltz"; a whiff of hickory smoke; the running of the fingers across a swatch of corduroy; the sweet

---

**9.** *Law of Evidence* (1st Ed., 1954), 16.

**10.** Limited only, in the wise discretion of the trial judge, by such questions as time investment, logistics and a sense of courtroom decorum or taste.

carbonation of a chocolate soda; the sight of a faded snapshot in a long-neglected album. All that is required is that it may trigger the Proustian moment.[11] It may be anything which produces the desired testimonial prelude, "It all comes back to me now." [12]

Of just such possibilities did Learned Hand speak in *United States v. Rappy,* 157 F. 2d 964, 967 (2d Cir. 1946):

"Anything may in fact revive a memory: a song, a scent, a photograph, an allusion, even a past statement known to be false."

The United States Court of Appeals for the Ninth Circuit addressed the same issue in *Jewett v. United States,* 15 F. 2d 955 (1926), and concluded, at 956:

"[I]t is quite immaterial by what means the memory is quickened; it may be a song, or a face, or a newspaper item, or a writing of some character. It is sufficient that by some material operation, however mysterious, the memory is stimulated to recall the event, for when so set in motion it

---

**11.** Marcel Proust, in his monumental epic *In Remembrance of Things Past,* sat, as a middle-aged man, sipping a cup of lime-flavored tea and eating a madeleine, a small French pastry. Through both media, two long-forgotten tastes from childhood were reawakened. By association, long forgotten memories from the same period of childhood came welling and surging back. Once those floodgates of recall were opened, seven volumes followed.

**12.** Generally speaking, the process of refurbishing a witness's memory will take place as a part of astute counsel's trial preparation. It is only when memory, through courtroom fear or otherwise, unexpectedly bogs down on the witness stand (or when the witness whose memory needs refreshing is one other than counsel's own) that the courtroom becomes the arena for the refurbishing. McCormick, *Law of Evidence* (2nd Ed., 1972), points out, at 14-15:

"As we have seen, the interviewing of witnesses by counsel who will examine them in court is a necessary step in preparing for trial. It is at this stage that the memory of the witness can best be refreshed about the facts of the case, by giving him the opportunity to read his own written statements previously made, or the letters, maps, or other documents in the case. It is only when this review of the data is insufficient to enable the witness to recall the facts while testifying that refreshing his memory on the stand is advisable. If it is matter which a jury would suppose he should remember unaided, the use of a crutch lessens their confidence in the testimony."

functions quite independently of the actuating cause."

Jerome Frank in *Fanelli v. United States Gypsum Co.*, 141 F. 2d 216, 217 (2d Cir. 1944), put it in these terms:

"Common experience, the work of Proust and other keenly observant literary men, and recondite psychological research, all teach us that memory of things long past can be accurately restored in all sorts of ways. The creaking of a hinge, the whistling of a tune, the smell of seaweed, the sight of an old photograph, the taste of nutmeg, the touch of a piece of canvas, may bring vividly to the foreground [of] consciousness the recollection of events that happened years ago and which would otherwise have been forgotten. . . . The memory-prodder may itself lack meaning to other persons as a symbol of the past event, as everyone knows who has ever used a knot in his handkerchief as a reminder. Since the workings of the human memory still remain a major mystery after centuries of study, courts should hesitate before they glibly contrive dogmatic rules concerning the reliability of the ways of provoking it."

Although the use of a memorandum of some sort will continue quantitatively to dominate the field of refreshing recollection, we are better able to grasp the process conceptually if we appreciate that the use of a memorandum as a memory aid is not a legal phenomenon unto itself but only an instance of a far broader phenomenon. In a more conventional mode, the process might proceed, "Your Honor, I am about to show the witness a written report, ask him to read it and then inquire if he can now testify from his own memory thus refreshed." In a far less conventional mode, the process could just as well proceed, "Your Honor, I am pleased to present to the court Miss Rosa Ponselle who will now sing 'Celeste Aida' for the witness, for that is what was playing on the night the burglar came through the window.' Whether by conventional or unconventional means,

precisely the same end is sought. One is looking for the effective elixir to revitalize dimming memory and make it live again in the service of the search for truth.

Even in the more conventional mode, it is quite clear that in this case the appropriate effort of the appellant to jog the arguably dormant memory of the key police witness on a vital issue was unduly and prejudicially restricted.

> *Judgments reversed; case remanded for a new trial; costs to be paid by Mayor and City Council of Baltimore.*