469 A.2d 909

**Edward Hugh FITZWATER**

v.

**STATE of Maryland.**

**No. 466, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Jan. 12, 1984.

Scott McLarty, Athens, Ga., for appellant.

Ann E. Singleton, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. of Maryland, James L. Sherbin, State's Atty., for Garrett County and Daun R. Weiers, Asst. State's Atty., for Garrett County on brief, for appellee.

Submitted before GARRITY, GETTY and BELL, JJ.

BELL, Judge.

Appellant, Edward Hugh Fitzwater (Fitzwater) was found guilty by a jury in the Circuit Court for Garrett County of resisting arrest, failure to display a license, and speeding. The court sentenced Fitzwater to pay fines of: $500.00 for resisting arrest; $10.00 for failure to display a license; $40.00 for speeding and court costs. Fitzwater timely noted an appeal, raising four issues:

1. Did the court err in not requiring maintenance records to establish the internal calibration of the radar?

2. Did the court err in permitting a state trooper to testify as to the accuracy of the internal calibration procedure?

3. Did the court err regarding the use of documents by the state trooper to refresh his recollection?

4. Did the court invade the province of the jury by appointing a jury foreperson?

Our answer is no to all four questions; and we affirm.

## FACTS

On June 3, 1982, Trooper John E. Foley (Foley) stopped Fitzwater for an alleged speeding violation. Foley had detected a speed of 66 m.p.h. with the Decatur radar device mounted in the patrol vehicle and had visually observed Fitzwater's car travelling in excess of 50 m.p.h. When Foley stopped Fitzwater and requested to see his driver's license and registration, Fitzwater refused to show him either. Fitzwater refused a second request and Foley arrested Fitzwater. Due to Fitzwater's persistent resistance, Foley forcibly removed Fitzwater from his vehicle.

Trooper Foley was a certified operator of the radar. He testified at trial how the radar operated and how it was calibrated. His testimony explained that: the device, which is mounted in the patrol vehicle, projects a beam that will pick up a moving object, an indicator shows the speed of the object-vehicle. It also has a digital readout indicating the simultaneous speed of the police vehicle.

The machine is calibrated before use by a certified operator (Foley in this case) and it has two internal checks. One is a check to make sure all lights are functioning on the machine and the other is a tuning fork check which calibrates the speed. Two tuning forks are assigned to the machine and are tuned to set speeds of 45 m.p.h. and 90 m.p.h.

Foley, who had successfully performed both of these tests, further testified that the machine is internally calibrated by a certified technician. When the State offered the maintenance records of the internal calibration into evidence, Fitzwater objected on grounds that the State violated discovery rules by failing to list the records as an exhibit. The court sustained the objection. Fitzwater also objected to Foley's testimony regarding the internal calibration procedures and the radar readout. The ground for objection was that no foundation had been laid because the maintenance records were not admitted and Foley was not a certified technician. The court overruled this objection, stating:

> "I think by this point it has been established that the use of the tuning fork calibrates the instrument, and if it doesn't give you 45 and it doesn't give you 90, it isn't working. When it does, it is working."

Foley compared his speed on the readout of the radar device to that on the speedometer of his vehicle and it was the same. He had no indication that the radar device was not working properly and explained there were no other checkout or starting up procedures recommended for that particular machine. He stated that he had followed all of the recommended procedures "faithfully".

On cross-examination, Foley testified that he did not know how the machine worked internally or exactly why tuning forks were used to test the machine. He stated that further internal calibration was done by a certified technician working for the Maryland State Police every six months. Fitzwater's renewed objection to admission of testimony concerning calibration and the radar readout was denied, since the court accepted the trooper's testimony that external readings would not be correct if the machine's internal calibration was off. His motion for judgment of acquittal at the end of the State's case in chief was denied.

Several witnesses testified for the defense. Charles E. Stemple, Jr., an employee of Fitzwater, testified he used the beige van for delivery of furniture and it could barely do 55

miles per hour. William Madigan, another employee of Fitzwater, also testified that the beige van would not go over 55 miles per hour, loaded or unloaded.

Fitzwater testified that he was driving the van between 45 and 55 miles per hour that afternoon and that his speedometer registered 50 miles per hour. When he was stopped, Fitzwater asked the trooper what was the probable cause. Foley responded that Fitzwater was speeding at 66 miles per hour. Fitzwater stated he asked the trooper to read him his rights since it was a criminal violation but the officer put him under arrest, grabbed him, jerked him out of the van and handcuffed him without reading him his rights. Fitzwater denied that he was resisting arrest, but explained he was just protecting himself. Additionally, Fitzwater testified that Foley changed the reading on the citation to read 66 miles per hour so that he would receive a higher number of points.

Fitzwater's motion for judgment of acquittal at the end of the case was denied and the jury returned verdicts of guilty on all three counts.

I. *Did the court err in not requiring maintenance records to prove the accuracy of internal calibration?*

Fitzwater contends that the court erred in not requiring maintenance records to establish the accuracy of the internal calibration of the radar. Fitzwater maintains that by violating the discovery rules and thus not being able to produce the records at trial, the state failed to meet its burden to prove proper records were kept, as established by this Court in *Great Coastal Express, Inc. v. Schruefer,* 34 Md.App. 706, 369 A.2d 118 (1977).

Maryland has long recognized that the speed of a motor vehicle may be measured by radar. Md.Code (1974, Cum.Supp.1983) Courts and Judicial Proceedings Art., § 10–301. Although the statute does not set forth any requirements for proving the accuracy of the radar, the Court in *Great Coastal Express, Inc. supra,* relying on *Unit-*

*ed States v. Dreos,* 156 F.Supp. 200 (D.Md.1957) and *Villegas v. Brysor,* 494 P.2d 61, 16 Ariz.App. 456 (1972), set forth some guidelines stating at p. 715, 369 A.2d 118,

> It is sufficient to show that the equipment has been properly tested and checked, that it was manned by a competent operator, that proper operative procedures were followed, and that proper records were kept.
>
> .    .    .    .    .
>
> [There should be proof to indicate] the instrument relied upon was in good working order and accurate at the time the recording was made.

■ Applying the above principles to the case at bar, we agree with the trial court that the requirements set forth in *Great Coastal* have been met. As Judge Thayer stated:

> As I read the requirements set forth [in *Great Coastal, supra.*] . . . it is sufficient to show that the equipment has been properly tested and checked, and I take it the calibration that the officer did at 4:00 when he came on duty would satisfy that. That it was manned by a competent operator, the officer has testified that he is such. That proper operative procedures were followed, I haven't heard any evidence of that at this time. And that proper records were kept, I don't know records of what, but it goes on to say that it must be shown that it was in good working order and accurate at the time the recording was made. *Now the State has a record. I've not permitted it into evidence, but the fact that there is a record, I think is admissible....* (Emphasis added).

At the time the court ruled on the objection, there was no testimony as to whether operative procedures were properly followed; however, by the end of the trial the evidence showed that Foley faithfully followed all the checkout and startup procedures. In light of the fact that Foley performed the two calibration tests, was a certified operator of that particular device and maintenance records did exist, we find this case to fall within the perimeters of *Great Coastal.* The court did not err.

II. *Did the court err in allowing a state trooper to testify as to the accuracy of the internal calibration of the radar?*

Fitzwater contends that since Foley was not a certified technician he was not competent to testify as to the accuracy of the internal calibration. Fitzwater maintains that the court erred in admitting such testimony; and therefore, it had not been established that the equipment was built and operated on sound scientific principles and was in proper working order. The State, on the other hand, contends that since Foley was a qualified operator of the machine the court properly permitted Foley's testimony as to calibration and speed detected by the radar.

The Court of Appeals of Maryland has established the test for admissibility of expert testimony. That test is whether the jury can receive appreciable help from the particular witness on the subject. *Nizer v. Phelps,* 252 Md. 185, 249 A.2d 112 (1967). The determination of whether the expert testimony will be of appreciable help and therefore admissible is within the sound discretion of the trial court. *Nolan v. Dillon,* 261 Md. 516, 276 A.2d 36 (1971); *Terry v. State,* 34 Md.App. 99, 366 A.2d 65 (1976). The court's exercise of that discretion will not be disturbed on appeal unless clearly erroneous. *Spence v. Wiles,* 255 Md. 98, 257 A.2d 164 (1969); *Brown v. State,* 29 Md.App. 1, 349 A.2d 359 (1975). A witness may be competent to express an expert opinion if he is reasonably familiar with the subject under investigation, regardless of whether special knowledge is based on professional training, observation, and/or actual experience. *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 298–99, 29 A.2d 653; *Redman v. Harold,* 279 Md. 167, 367 A.2d 472 (1977). A police officer possessing a special knowledge gained from a background of experience, in the discretion of the trial court, may be permitted to express an expert opinion in the area of that special knowledge. *Butler v. State,* 19 Md.App. 601, 313 A.2d 554 (1974). Once the court admits the expert testimony, the weight to be accord-

ed it is for the trier of fact. *Duvall v. Potomac Electric,* 234 Md. 42, 47, 197 A.2d 893 (1963); *Bergeman v. State Roads Comm.,* 218 Md. 137, 142–43, 146 A.2d 48 (1958).

■ Applying the above principles, we find the court was not clearly erroneous and did not abuse its discretion in admitting Foley's testimony. Foley had a special knowledge of the radar gained from his experience as a police officer. In fact, he was certified on the particular radar device in his vehicle since 1978. He had specific knowledge as to the procedures used to calibrate the radar (tuning fork tests). Foley knew the instrument was internally calibrated every six months. This testimony certainly was of appreciable help to the jury. Moreover, Fitzwater had an opportunity to cross-examine Foley on his qualifications and on the actual procedures used to calibrate the radar internally. The fact that Foley was not a certified technician was simply another factor to be considered by the jury in evaluating Foley's testimony.

Fitzwater's contention that the State did not establish that the radar was built and operated on sound scientific principles is without merit since the Legislature has specifically stated that the speed of a motor vehicle may be measured by radar. Md.Code (1974, Cum.Supp.1983) Courts and Judicial Proceedings Art. § 10–301. The evidence adduced at trial shows that this specific radar device was in proper working order. *See* Issue I, *supra.*

III. *Did the court err regarding the use of documents by Foley to refresh his recollection?*

Fitzwater contends the court erred: (1) in allowing Foley to refresh his recollection by reviewing a document when the time of making, the authorship, and the accuracy of the writing had not been established; and (2) in not permitting Fitzwater's counsel to review the writing allegedly used to refresh Foley's recollection.

The law regarding present recollection refreshed was set forth by this Court in *Askins v. State,* 13 Md.App. 702, 284

A.2d 626 (1971), which distinguished present recollection revived from past recollection recorded. The Court stated at pp. 709–710, 284 A.2d 626:

The standards for the admission of a memorandum into evidence as past recollection recorded and those for the use of a memorandum to revive present recollection differ. The former is an exception to the hearsay rule where the memorandum is actually admitted into evidence as substantive evidence. Unfortunately, some courts have tended to lump the two together under the heading of 'refreshing recollection' and have applied the same standards to both. However, the foundation necessary to use a memorandum to revive present recollection differs from that for the use of past recollection recorded. Past recollection recorded is where 'a witness, who is either devoid of a present recollection or possessed of an imperfect present recollection, desires to use a past recollection. This he proposes to do by employing some record of his past recollection.' The authorities are in general agreement, as to past recollection recorded, that to introduce the memorandum into evidence there must be a showing that the witness identifies the memorandum as made immediately after or contemporaneously with the event and that the memorandum is a correct statement of those facts which the witness recorded. *Hall v. State,* 223 Md. 158, 176 [162 A.2d 751]. Stated succinctly, in order to introduce past recollection recorded, the general rule is that it is necessary to adduce from the witness '(a) that he at one time had personal knowledge of the facts, (b) that the writing was, when made, an accurate record of the event, and (c) that after seeing the writing, he has not sufficient present independent recollection of the facts to testify accurately in regard thereto.' *Kinsey v. Arizona,* 49 Ariz. 201, 65 P.2d 1141 at 1148, cited with approval in *Hall v. State, supra,* at 173 [162 A.2d 751].

Present recollection revived, on the other hand, is the use by a witness of some writing or other object to refresh his recollection so that he may testify about past events

from present recollection. Generally, the authorities agree that none of the limiting rules for past recollection recorded have any bearing on present recollection revived and that any writing whatever is eligible for use. On the other hand, the authorities are in agreement that in certain circumstances the expedients for stimulating recollection may be so misused that the witness may put before the court that which purports to be, but is not in fact, his recollection and knowledge and that, therefore, any writing whatever, in the circumstances, may become improper. Although no hard and fast rule can be laid down for invariable application, the *predominant view today seems to be that within the sound discretion of the trial judge any memorandum or other object may be used as a stimulus to present memory, without restriction by rule as to authorship, guarantee of correctness, or time of making. Kramer v. Commission of Internal Revenue,* 389 F.2d 236, 238 (1968) (Emphasis Added).

█ In the case at bar, Foley testified as to past events but from his present recollection. The State did not attempt to admit the document into evidence. Thus, the rules of present recollection revived, rather than past recollection recorded apply to the instant case. The pertinent testimony is as follows:

MR. McLARTY: Excuse me, your Honor, I'm—I'm going to object to his using something to refresh his recollection unless I'm going to have an opportunity to review it and cross-examine him on it. I notice he's reviewing—he's reciting from his notes there.

THE COURT: You obviously will have an opportunity to cross-examine him.

MR. McLARTY: I'd just like an opportunity to review those notes that he's using.

THE COURT: I don't see that he has opened his folder yet, Mr. McLarty.

MR. McLARTY: Okay, well I—the State, I believe, will concede that he, in fact, had opened it and was reading from it. Is that not correct, Officer Foley?

MR. WEIERS: It looked like he was leafing through it your Honor, a while ago.

THE COURT: All right.

By Mr. Weiers:

Q. Do you need the items in your hand to refresh your recollection, Trooper?

A. No. It would be helpful.

Q. If you do, let us know.

A. Okay.

A review of the pertinent testimony indicates that since the rules of present recollection revived apply, the court did not err. The court was not required to insure that the time of making, the authorship and the accuracy had been established. Furthermore, at most the evidence shows that Foley opened his folder prior to the time he was on the witness stand. There is no rule prohibiting a witness from refreshing his recollection prior to taking the oath and testifying. The court certainly did not abuse its discretion in determining that Foley had not opened his folder while on the witness stand.

Fitzwater's second allegation—that his attorney was not permitted to see the contents of the folder—is likewise without merit. Since the court determined that Foley was not using the document to refresh his recollection, there was no reason for Fitzwater's counsel to view it. Moreover, the request to see the document was not renewed after the court's determination.

IV. *Did the court invade the province of the jury by appointing a foreperson?*

Fitzwater contends the court deprived him of a fair trial by appointing a jury foreman. Rule 751 of the Maryland Rules of Procedure states "the Court *shall* designate a juror as foreman". (Emphasis added). In addition, this issue was not preserved for appeal.

The court did not err.

286

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.