699 A.2d 570

**Ramone Marcasean ROBINSON**

v.

**STATE of Maryland.**

**No. 1795, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Sept. 5, 1997.

Rebecca L. Gilbert (Steven D. Kupferberg, on the brief), Rockville, for Appellant.

Thomas K. Clancy, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Jack B. Johnson, State's Attorney for Prince George's County, Upper Marlboro, on the brief), for Appellee.

Argued before CATHELL and SALMON, JJ., and JOHN J. GARRITY, Judge (retired), Specially Assigned.

SALMON, Judge.

After a three-day trial in the Circuit Court for Prince George's County, (Spellbring, J., presiding), a jury convicted appellant, Ramone Robinson, of Assault with the Intent to Murder, Robbery with a Dangerous Weapon, Assault with the Intent to Rob, Conspiracy to Commit Robbery with a Dangerous Weapon, three counts of Use of a Handgun in the Commission of a Crime of Violence, two counts of False Imprisonment, and Battery. The trial court later struck the jury's guilty verdict on the Assault with Intent to Murder charge because the jury had entered a not guilty verdict on the underlying count of Attempted Murder. The court also struck two of the three counts relating to Use of a Handgun in the Commission of a Crime of Violence. Appellant was sentenced to a total of 50 years imprisonment.

On appeal, appellant presents two issues for our review:

I. Whether the trial court committed reversible error when it refused to allow defense counsel to cross-examine two critical State witnesses with their prior written statements.

II. Whether the trial court committed reversible error when it instructed the jury on two ultimate issues in this case.

The first issue presented requires us to decide whether a defendant is entitled to production of confidential statements made by police officers, which are not, and never

were, in the possession of the Office of the State's Attorney. This is an issue of first impression in this State. Under the principles adopted by the Court of Appeals in *Carr v. State,* 284 Md. 455, 397 A.2d 606 (1979), as well as *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and the "Jencks Act," 18 U.S.C. § 3500 (1994), a defendant is entitled to production of a witness's prior statement if, *inter alia,* the prosecution or the prosecutorial arm of the government is in "possession" of the statement. We hold that, when a statement is confidential under State law, developed for a non-prosecutorial purpose, and held by a division of a law enforcement agency that is not working in conjunction with the prosecutor, the State cannot be deemed to have access to, or constructive possession of, the statement. Hence, a defendant is not entitled to production of such statements under the Jencks-*Carr*\* rule.

## FACTS

### A. State's Version of Events

On January 18, 1996, two men in ski masks robbed a 7-11 store located on Walters Lane in Forestville, Maryland. The store closed at midnight. The robbery commenced at approximately 1:00 a.m. and concluded after 2:00 a.m. On duty that night were three female employees: Lang Tuy Luc, Anissa Abdurahim, and Lucinda Washington. Luc was emptying the trash when a man with a ski mask aimed a gun at her head, told her to "lay down or I kill you," and took money from her purse. The man who robbed Ms. Luc wore blue jeans, black sneakers, and a "plaid" shirt.

Inside the store, another masked man forced the two other employees to lie on the floor. The men asked Washington and Abdurahim for the store's money. Washington told them it was in the safe, but they did not have a key. At this point, a gunman brought Luc into the store, tied her up, and left her in the store's office. Ultimately, the store's safe, which weighed about 250 pounds, was taken out of the store by the robbers.

---

\* In this opinion, when we use *"Jencks-Carr,"* we refer to the Jencks Act, not the *Jencks* case.

Prince George's County Police received a 911 call alerting them that a robbery was in progress at the 7–11. Officers Christopher Smith and Samuel Hooper responded to the call in a marked police cruiser. After Officer Smith exited the police car, he saw two men in ski masks come out of the store and enter a Nissan Pathfinder, which spun its wheels and accelerated straight toward him. The police officers fired at the vehicle, and it skidded to a stop in a snowbank. Officer Hooper yelled at the occupants to place their hands out of the vehicle. One of the gunmen fired at Officer Smith. Officer Hooper, who was standing behind a telephone pole, slipped on the ice and slid parallel to the passenger side of the vehicle. Shots were fired at Officer Hooper from the Pathfinder's passenger window. Both officers returned fire. The passenger, Tyrone Glover, then surrendered without incident. Appellant Robinson exited the vehicle holding a gun in his hand. Officer Hooper commanded him to drop the gun, at which point Robinson "began incoherently screaming and started pulling the trigger" of his gun. The officers fired at Robinson, striking him four times.

When the policemen approached Robinson, he was laying face down on the pavement. The gun was located near his right hand. Robinson's clothes were cut off in order to administer emergency assistance at the scene. A gun holster was found in his pants.

During a post-arrest search of the scene, the store's safe was found in the parking lot, as were some U.S. currency and some coins in wrapping tubes. From the front seat of the Pathfinder the police recovered $139.00 contained in coin tubes, which, according to Ms. Luc, were exactly "the same kind of tube" used by 7–11. Also found on the front seat of appellant's truck were ninety-six Maryland lottery tickets.

## B. Defendant's Version of Events

Robinson was the lone defense witness. He adamantly denied that he knowingly played any role in the 7–11 robbery. Robinson testified that he was driving Tyrone Glover home

when Glover asked him to stop at the 7–11. He waited in his Pathfinder while Glover went inside to get a soda and cigarettes. Appellant, while waiting, received a page and used the pay phone outside the store to respond to it. Glover then came out of the store and fumbled around in the Pathfinder, possibly looking for change. Glover went back inside the store, and Robinson got behind the steering wheel and waited. Glover then got back in the vehicle and said he was "ready."

According to Robinson, as he drove from the parking lot several shots were fired at his truck from behind a snowbank. He did not know who was shooting at him, and he did not see the police officers or their car. One of the bullets hit the left front tire, he lost control of the vehicle on the ice and hit a snowbank. Robinson heard "some guys" telling him to get out of the truck. He and Glover attempted to get out, but the doors were stuck due to the snow. Before he could get his door open, several more shots were fired. When he managed to open the door, he exited the Pathfinder with his hands raised. He was told not to move. Robinson heard several additional shots, one of which hit him in the leg. He began to hop on one foot and saw Glover exit the truck. The "guys" again ordered him not to move. Appellant kept his hands up, but he heard more shots and was hit three more times. Appellant testified that "he had no idea" where the police found the holster and denied that he had been armed.

Appellant testified that on the night of the robbery he wore blue jeans, black boots, and a multi-colored red flannel shirt.

## C. Evidentiary Issues and Instructions

During defense counsel's cross-examination of Officer Smith, Smith testified that he had given a statement to the Internal Affairs Division of the Prince George's County Police Department concerning the arrest of Robinson and Glover. Defense counsel did not, however, request a copy of the statement at any time during Officer Smith's testimony.

Later, when cross-examining Officer Hooper, defense counsel discovered that Officer Hooper had also provided a state-

ment to the Internal Affairs Division. Defense counsel requested a bench conference. At the bench conference he contended that the defense was entitled to the internal affairs statements made by Officers Smith and Hooper. Defense counsel added that it was his understanding that witness statements were "discoverable, but they [the prosecution] didn't have to hand them over until the witness ... had finished direct examination." Judge Spellbring responded that he did not think that such a rule applied to statements given to Internal Affairs. He asked defense counsel if he had any legal authority supporting the defendant's position. Defense counsel[1] could not cite any authority but held his ground by, among other things, saying: "I know it's the State's responsibility to give us exculpatory statements."

Judge Spellbring asked the Assistant State's Attorney whether she had attempted to get the internal affairs statements, and she responded:

No, your Honor. I didn't even know that they made statements....

It's my understanding that statements to the Internal Affairs Division are not the privy of the State's Attorney's Office either. That's an underlying policy.... They have to keep that investigation somewhat separate and apart from the State's Attorney's Office. Therefore, it's been my understanding that we don't receive those types of statements, and I have not received any in this case.

Judge Spellbring instructed the prosecutor "to inquire" as to the availability of the statements "only to determine whether there is anything exculpatory within them and for no other purpose at this point." He requested that counsel appear in chambers the next morning and that the officers' statements be made available to him.

Present in chambers the next day were the prosecutor, defense counsel, and an Assistant County Attorney. The record does not indicate that the internal affairs statements of

---

1. Appellant is represented by different counsel on appeal.

Officers Hooper and Smith were ever turned over to the prosecutor. Judge Spellbring placed the following on the record regarding the meeting in chambers:

> [Defense Counsel's] position was that he was entitled to both the statements of Officer Smith and Officer Hooper to the Internal Affairs department. [The Assistant County Attorney's] position on behalf of the Police Department was that these matters were a part of the officers' personnel files and were not subject to production in this matter or any other matter. I made the decision that I would view the documents *in camera* to determine whether there was any exculpatory information in either of the statements. I have conducted that *in camera* review.

> I have determined that there is no exculpatory information in either of those two statements.

The statements were not turned over to counsel, but the originals were filed, under seal, as exhibits for appeal purposes.

During the cross-examination of Officer Hooper, defense counsel began to inquire about details of the internal affairs investigation. After an objection by the State, a bench conference was convened at which the court stated:

> I'm going to sustain the objection. But more than that, if this area is gone into by further interrogation or in final argument, I intend on my own to instruct this jury that I have viewed the statements, that these police officers were exonerated and that I have found the statements to be totally consistent with their testimony here today.

Later, during the cross-examination of another witness, the defense attempted to inquire about the witness's trajectory analysis of the bullets that had left holes in the Pathfinder. This analysis apparently had been performed in relation to the internal affairs investigation. After an objection by the State, the court ruled that defense counsel could pursue this line of questioning but that it was going to instruct the jury in regard to the internal affairs investigation. Defense counsel responded that "if that's what you think you have to do that's fine.

But I think that [it's] important that this gets examined."
Thereafter, the court gave the following instruction:

[L]adies and gentlemen of the jury, it's come out in this case
that two matters are going on here. First, there is this case
that is for you to consider; and secondly, there's the inter-
nal investigation by the police department which takes place
every time a police officer fires his weapon. Just so there's
no issue in this case, I have precluded evidence of the
Internal Affairs investigation thus far. We're now into it.

I will tell you the Internal Affairs investigation cleared
the two police officers. I will tell you that I have examined
the two statements that were made by the two police
officers to the Internal Affairs people and have found noth-
ing in there that is exculpatory in this case. And for that
reason neither the investigation nor those statements will be
coming into this case. But now that the issue has been
opened, I want the issue to be fully presented to you.

Defense counsel did not lodge an objection to the instruction.

After the State rested its case, but before the defense put
forth its evidence, the jury sent the trial court a note asking it
to "Please Define Exculp[a]tory." The court informed counsel
that it intended to tell the jury "it means free from guilt."
Defense counsel objected and moved for a mistrial.[2] The

---

**2.** The full colloquy that took place between defense counsel and the
court after the defense objected was as follows:

[DEFENSE COUNSEL]: Your Honor, I was thinking about it over
lunchtime. I really think that we need a mistrial in this case. And
the reason being that for the State to come in here and try to put in
evidence as to what happened in this case and to fragment the
evidence into departmental shooting evidence or evidence as to what
happened at the time of the shooting, which we have to go into in
order to defend—

THE COURT: You don't have to go into evidence. And that was
the only purpose, that [the] Internal Affairs investigation is totally
irrelevant to what this jury has to decide. But if you want to put it
in, then they have a right to be fully informed of it.

. . . .

[DEFENSE COUNSEL]: At this time I will move for a mistrial. I
don't think the [c]ourt should give the type of instruction as to
exculpatory or not. I can't remember the last time I heard of a

court then instructed the jury that exculpatory means, "in the legal sense ... free from guilt. It's the opposite of guilty."

## ANALYSIS

### I.

At the outset, it is important to note what is not at issue.

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the government must turn over evidence to the accused, if the evidence is both favorable to the accused and material to the defendant's guilt or innocence. Appellant does not contend that the government failed to provide him with exculpatory *Brady*-type material. Instead, appellant's brief focuses exclusively on the issue of whether Judge Spellbring's failure to turn over the officer's statements violated the Jencks-*Carr* rule. In this regard, the failure to rely on *Brady* and its progeny is understandable in light of the Supreme Court decision in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), which, in at least some respects, is markedly similar to the case at hand.

Ritchie was accused of various sexual offenses against his thirteen-year-old daughter. Prior to trial, Ritchie subpoenaed the file of a child protective agency ("the agency") that had investigated the child abuse charges. 480 U.S. at 43, 107 S.Ct. at 994. The agency resisted the subpoena based on a Pennsylvania statute that, with eleven exceptions, mandated that reports and other information obtained by the agency in the course of their investigation be kept confidential. *Id.* One of the exceptions was that the agency could disclose information in their files to courts of competent jurisdiction "pursuant to a court order." *Id.* at 43–44, 107 S.Ct. at 994. The trial judge refused to release the records to the defendant. *Id.* at 44, 107 S.Ct. at 994. The main witness against Ritchie at trial was his daughter. *Id.* Ritchie was convicted, but, on appeal, the

---

police shooting that wasn't found to be a good shooting, at least not in the Washington metro area.

Pennsylvania Supreme Court vacated the conviction and remanded the case to determine if a new trial was necessary. 509 Pa. 357, 502 A.2d 148 (1985). It concluded that the trial court had violated the Confrontation Clause and the Compulsory Process Clause of the United States Constitution and that Ritchie's lawyer was entitled to review the agency's entire file to search for any useful evidence. *Id.* at 46, 107 S.Ct. at 995. The Supreme Court granted *certiorari* and observed:

Although we recognize that the public interest in protecting this type of sensitive information is strong, we do not agree that this interest necessarily prevents disclosure in all circumstances. This is not a case where a state statute grants CYS the absolute authority to shield its files from all eyes. Cf. 42 Pa. Cons.Stat. § 5945.1(b) (1982) (unqualified statutory privilege for communications between sexual assault counselors and victims). Rather, the Pennsylvania law provides that the information shall be disclosed in certain circumstances, including *when CYS is directed to do so by court order.* Pa. Stat. Ann., Title 11, § 2215(a)(5) (Purdon Supp.1986). Given that the Pennsylvania Legislature contemplated some use of CYS records in judicial proceedings, we cannot conclude that the statute *prevents all disclosure in criminal prosecutions.* In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is "material" to the defense of the accused.

*Id.* at 57–58, 107 S.Ct. at 1001–02 (emphasis added)(footnote omitted).

A plurality of the Supreme Court affirmed the decision of the Pennsylvania Supreme Court to remand the case; however, it ruled that Ritchie's lawyer was not entitled to review the agency's file. *Id.* The *Ritchie* Court held that the trial judge should review the file "to determine whether it contained information that probably would have changed the outcome of ... [Ritchie's] trial." *Id.* The Court said:

A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through

the Commonwealth's files. See *United States v. Bagley, supra,* 473 U.S. [667], at 675, 105 S.Ct. [3375], at 3380 [87 L.Ed.2d 481 (1985)]; *United States v. Agurs, supra,* 427 U.S. [97], at 111, 96 S.Ct. [2392], at 2401 [49 L.Ed.2d 342 (1976)]. Although the eye of an advocate may be helpful to a defendant in ferreting out information, *Dennis v. United States,* 384 U.S. 855, 875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966), this Court has never held—*even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. See *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one").

*Id.* at 59–60, 107 S.Ct. at 1002 (emphasis added) (footnote omitted).

At bottom, in regard to the discovery issue, Judge Spellbring followed the procedure recommended in *Ritchie.*

Appellant asserts that the trial judge erred by refusing to grant appellant's request for production of the officers' statements to the Internal Affairs Division following the State's direct examination of Officer Hooper. According to appellant, under *Carr v. State,* 284 Md. 455, 397 A.2d 606 (1979), and *Leonard v. State,* 46 Md.App. 631, 421 A.2d 85 (1980), *aff'd,* 290 Md. 295, 429 A.2d 538 (1981), a defendant is entitled, for cross-examination purposes, to inspect prior statements made by the State's witnesses. Appellant contends that the trial

judge erred by concluding that the statements were producible only if they contained exculpatory material.

The State counters that appellant failed to preserve this issue as to Officer Smith's statement. In regard to Officer Hooper's statement, the State argues that the records of the internal affairs investigation were confidential and only subject to disclosure, if at all, pursuant to the Maryland Public Information Act. Md.Code Ann., State Gov't §§ 10–611 to 10–628 (1995 Repl.Vol.).

In *Carr v. State,* the Court of Appeals held that, for cross-examination purposes, defense counsel is, under certain circumstances, entitled to inspect prior statements of the State's witnesses. *Jones v. State,* 310 Md. 569, 582–83, 530 A.2d 743 (1987), *vacated,* 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916, *aff'd in part and vacated on other grounds,* 314 Md. 111, 549 A.2d 17 (1988). By so holding, the Court adopted the underlying principles set forth by the Supreme Court in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). *See Chief, Montgomery County Dep't of Police v. Jacocks,* 50 Md.App. 132, 139, 436 A.2d 930 (1981) (by judicial decision, Maryland courts have adopted the underlying principles in *Jencks v. United States* ). In *Jencks,* 353 U.S. at 668, 77 S.Ct. at 1013, the Supreme Court held that, in criminal cases, after a witness has testified on direct examination for the prosecution and upon motion by the defense, the prosecution must produce for inspection all written reports or statements made by the witness concerning the subject matter of the testimony.[3] Three months after the *Jencks* decision was filed Congress enacted the "Jencks Act," codified at 18 U.S.C. § 3500 (1994), which clarified and limited the Supreme Court's holding in *Jencks. See Jones,* 310 Md. at 584, 530 A.2d 743; *Jacocks,* 50 Md.App. at 139, 436 A.2d 930; James C. Cissell,

---

3. The "purpose of requiring production of these statements is to allow defense counsel the opportunity to discover any inconsistencies between the witness' trial testimony and his prior statements. Armed with these inconsistencies, defense counsel would be better able to impeach the credibility of the witness' trial testimony." *Kanaras v. State,* 54 Md.App. 568, 575, 460 A.2d 61 (1983).

*Federal Criminal Trials* § 8–1 (4th ed. 1996). Although the Maryland Legislature has not enacted a counterpart to the "Jencks Act," Maryland courts have looked to the Act, as well as subsequent analysis and interpretation of the statute, for guidance in interpreting the proper parameters of the *Carr* decision. *See Jones*, 310 Md. at 569, 530 A.2d 743; *Kanaras v. State*, 54 Md.App. 568, 577, 460 A.2d 61 (1983) (Maryland courts have "implicitly accepted the underlying foundations" of the Jencks Act "without adopting wholesale the rules contained therein"); *see, e.g., Bruce v. State*, 318 Md. 706, 724–26, 569 A.2d 1254 (1990); *Butler v. State*, 107 Md.App. 345, 357–60, 667 A.2d 999 (1995); *Whitehead v. State*, 54 Md.App. 428, 440–41, 458 A.2d 905 (1983).

■ The Jencks Act sets forth the requirements for production of prior statements made by a prosecution witness:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) [4] of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500(b). Thus, in order for a defendant to receive a witness's prior statement under the Jencks Act:

1) the witness must testify on direct examination;

2) defense counsel must request the statement;

---

4. The Jencks Act defines a discoverable statement as:
 (1) A written statement made by said witness and signed or otherwise adopted or approved by him;
 (2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
 (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
 18 U.S.C. § 3500(e). In *Jones v. State*, 310 Md. at 586, 530 A.2d 743, the Court of Appeals held that for the purposes of applying *Carr*, "a 'statement' under Maryland law is one given by a witness under the circumstances set forth in § 3500(e)."

3) the statement must qualify as a discoverable statement under the Jencks Act;

4) the statement must relate to the subject matter of the witness's testimony; and

5) the statement must be in the possession of the prosecution.

■ Regarding Officer Smith's prior statement, appellant has failed to preserve the Jencks-*Carr* issue for our review because appellant's trial counsel did not make a timely request for the statement. Although appellant's trial counsel knew of the statement's existence, he did not seek its production at any time during the cross-examination of Officer Smith. It was not until the cross-examination of Officer Hooper that appellant actually requested the Smith statement. Therefore, contrary to appellant's contention, the trial court never prevented the defense from using the statement to cross-examine Officer Smith.

Appellant's counsel did, however, make a timely request for Officer Hooper's statement during his cross-examination. Moreover, neither party disputes that Officer Hooper's statement qualifies as a discoverable "statement" under *Jencks* or that it relates to the subject matter of Officer Hooper's testimony on direct. Thus, the only issue before us is whether appellant met the fifth requirement of the Jencks-*Carr* rule, i.e., that the statement was in the possession of the Office of the State's Attorney. Material to the possession issue is a determination as to whether Officer Hooper's statement to the Internal Affairs Division is confidential under State law.[5]

---

5. Quoting *Boyd v. Gullett,* 64 F.R.D. 169, 178 (D.Md.1974), appellant asserts that "no privilege exists for investigatory files under the case law of Maryland." Appellant contends that the trial judge erred by implying that the statements were "privileged or not producible on the basis that they were police investigatory statements." While we agree with appellant that there "exists no sanctuary [for police reports] by virtue of the uniform or the badge," *Kanaras,* 54 Md.App. at 580, 460 A.2d 61, the issue before us is not one of privilege; it is whether the documents are confidential. The mere fact that a document is not

Section 728(b) of the Law Enforcement Officers' Bill of Rights (LEOBR), codified at Maryland Annotated Code, article 27, sections 727 to 734B (1957, 1996 Repl.Vol.), mandates that whenever "a law-enforcement officer is under investigation or subject to interrogation by a law-enforcement agency, for any reason which could lead to disciplinary action, demotion or dismissal, the investigation or interrogation shall be conducted" in accordance with the LEOBR. Officer Hooper's statement to the Prince George's County Police Department Internal Affairs Division, given as a result of a direct order to answer questions about the performance of his duties, is, therefore, covered under the LEOBR.

Under LEOBR sections 728(b)(5)(iii) and (iv), the only person outside the Internal Affairs Division entitled to see the contents of an investigatory file is the law enforcement officer under investigation. *See Mayor and City Council of Baltimore v. Maryland Comm. Against the Gun Ban*, 329 Md. 78,

---

privileged does not mean that a defendant is automatically entitled to it under the Jencks-*Carr* rule.

At least one court has determined that a confidential document, even if it is in the prosecutor's possession, does not necessarily have to be turned over to the defense for impeachment purposes. *See United States v. Figurski*, 545 F.2d 389 (4th Cir.1976). In *Figurski*, the Fourth Circuit set forth a test for determining whether a confidential presentence report should be disclosed. The court stated that the "basic issue is one of materiality."

> If the report contains exculpatory material, that part of the report must be disclosed. If the report contains only material impeaching the witness, disclosure is required only when there is a reasonable likelihood of affecting the trier of fact. Whether there is such a likelihood depends upon a number of factors such as the importance of the witness to the government's case, the extent to which the witness has already been impeached, and the significance of the new impeaching material on the witness' credibility.

*Id.* at 391–92. According to the court, if defense counsel requests disclosure of a confidential report, the district court should examine the report "*in camera* and disclose only those portions" that meet the aforementioned test. *Id.* at 392.

In the case at hand, we carefully reviewed Officer Hooper's statement to internal affairs, and we agree with the trial court's finding that it contains no exculpatory information. Moreover, we compared the statement with Officer Hooper's trial testimony, and the statement does not conflict with his testimony at trial.

90, 617 A.2d 1040 (1993) (subject of an internal affairs investigation is the officer on whom the investigation is focused). The LEOBR does not make any provision for any additional persons to obtain access to such files. Moreover, even the officer cannot obtain any part of the file unless he or she executes a confidentiality agreement with the law enforcement agency conducting the investigation, promising not to disclose any of the material contained in the record "for any purpose other than to defend the officer." Md. Ann.Code art. 27, § 728(b)(5)(iv)1. Once the confidentiality agreement is signed, the officer is entitled to receive only exculpatory information in the investigatory file. As a general rule, officers are precluded from obtaining non-exculpatory information or the identity of confidential sources. *Id.* § 728(b)(5)(iii). *But see* note 7, *infra*, and *Jacocks*, 50 Md.App. 132, 436 A.2d 930.

In *Maryland Committee*, 329 Md. at 84, 617 A.2d 1040, the Court stated that LEOBR sections 728(b)(5)(iii) and (iv) demonstrate that there "is a public interest in the confidentiality of investigations of police officers." The strict disclosure requirements in the aforementioned sections also demonstrate that, by enacting these provisions, the Legislature intended to maintain the confidentiality of these investigatory records.[6] We, therefore, hold that a statement made to the Internal Affairs Division by a police officer under investigation is confidential under the LEOBR.[7]

---

6. In *Maryland Committee*, 329 Md. at 83 n. 2, 617 A.2d 1040, the Court of Appeals, while discussing the requirements of the Maryland Public Information Act, stated that "if the Act does not require inspection [of police records], then the common law rule applies under which 'it is generally held that police records are confidential.' *Whittle v. Munshower*, 221 Md. 258, 261 [155 A.2d 670] (1959)[, *cert. denied*, 362 U.S. 981, 80 S.Ct. 1069, 4 L.Ed.2d 1016 (1960) ]."

7. Our holding in *Jacocks*, 50 Md.App. 132, 436 A.2d 930, does not contradict our determination that, under the LEOBR, a statement to internal affairs by an officer under investigation is confidential. In *Jacocks*, we held that statements given to internal affairs by persons who ultimately testify against the officer, at the administrative hearing, must be produced under Jencks principles. *Id.* at 143–44, 436 A.2d 930. We determined that those portions of a witness's statement to

Federal courts have construed the Jencks Act requirement that the prosecution produce "any statement ... of the witness in the possession of the United States" to mean that the statement must be in the possession of the *prosecutorial arm* of the government. *See United States v. Trevino*, 556 F.2d 1265, 1271 (5th Cir.1977); *United States v. Dansker*, 537 F.2d 40, 61 (3rd Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *see also United States v. Zavala*, 839 F.2d 523, 528 (9th Cir.), *cert. denied*, 488 U.S. 831, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988); *United States v. Bourne*, 743 F.2d 1026, 1032 (4th Cir.1984). Some courts have further interpreted the "in the possession" language to mean that a prosecutor must disclose statements to which the prosecutor has "access" but does not have actual physical possession. *Trevino*, 556 F.2d at 1272; *Dansker*, 537 F.2d at 61; *see also United States v. Hutcher*, 622 F.2d 1083 (2nd Cir.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980) (affidavits in possession of an arm of the district court are not subject to prosecution's control); *United States v. Weidman*, 572 F.2d 1199, 1207 (7th Cir.)(finding *Dansker* persuasive), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *United States v. Canniff*, 521 F.2d 565, 573 (2nd Cir.1975) (government cannot be required to produce document that it does not control and never possessed), *cert. denied sub. nom. Benigno v. United States*, 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976); *cf. United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir.1973) (under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requiring prosecutor to turn over exculpatory evidence in his possession, prosecutor was required to disclose evidence to which he had access but lacked present physical possession); *State v. Watson*, 173 W.Va. 553, 318 S.E.2d 603, 609 (1984) (citing *Trevino* with approval and holding that a prose-

---

internal affairs "pertaining to matters about which he testified" must be disclosed to the officer who is the subject of the investigation and administrative hearing. *Id.* at 143, 436 A.2d 930. Thus, these statements were only disclosed to the party in interest, i.e., the law enforcement officer under investigation, in the context of an administrative hearing against him. No statement made by the officer, under the LEOBR, was ordered disclosed to any other party.

cuting attorney "has possession of grand jury transcripts by virtue of his access to them" under the West Virginia Rules of Criminal Procedure).

In *Dansker*, 537 F.2d at 60, the defendant had requested production of a pre-sentence report containing statements made to the probation department by a witness. The Third Circuit held that the lower court did not err by refusing to turn over the statements to the defendant. The court explained:

> In speaking of statements "in the possession of the United States," we understand the statute to require production only of statements possessed by the prosecutorial arm of the federal government. Hence, such statements possessed by, for example, the F.B.I. or a United States Attorney must be turned over to the defense on proper motion. A pre-sentence report and statements contained therein, however, are not within the possession of the prosecution.

*Id.* at 61. The court pointed out that a pre-sentence report is a confidential document, to which the prosecution has only limited access under Federal Rule of Criminal Procedure 32(c); the report is prepared at the direction of the court by the probation department, which acts "as an arm of the court in such preparation." *Id.*

In *United States v. Trevino*, 556 F.2d at 1271, the Fifth Circuit held that a statement is only in "the possession of the United States" if it is in the hands of the "prosecutorial division" of the government. Thus, a pre-sentence report in the control of a probation officer was not in the hands of the federal prosecutor. The court stressed

> that *neither the prosecutor nor any governmental unit aligned with him in the prosecution can have possession of or access to* a presentence report [held by the probation officer].... Were we considering some type of report held by an arm of the government other than the probation officer—an investigative agency for example—different questions would be presented, those concerning the prosecutor's duty to disclose material not technically within his

possession but to which he has ready access. . . . Certainly the prosecutor would not be allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial. . . . *Id.* at 1272 (emphasis added).

In the case *sub judice,* the Assistant County Attorney represented to the trial judge that the statements of Officers Hooper and Smith were in the possession of the Prince George's County Police Department Internal Affairs Division. He took the position that the statements were not "subject to production in this matter or any other matter." The Assistant State's Attorney represented that she did not know of the statements prior to trial, nor did she have physical possession of the officers' statements.[8] The Assistant State's Attorney's representation was not rebutted by appellant. Thus, even if the Assistant State's Attorney wanted to obtain copies of the statements, she apparently could not do so.

Appellant argues that the county police are part of the investigatory arm of the State of Maryland. This is not true as to all parts of the police department. The Prince George's County Police Department cannot be viewed as a monolith—it has divisions that, at least for some purposes, are separate and distinct. Under such circumstances, the State's Attorney's Office does not constructively possess all statements held by all divisions of the police department. To know if the State constructively possesses a document, it must be determined whether the division of the police department that holds the document is working in concert with the prosecutor. If so, the State can be deemed to have access to, or constructive possession of, the document. *Butler v. State,* 107 Md.App. 345, 359–60, 667 A.2d 999 (1995); *see Trevino,* 556 F.2d at 1272; *Dansker,* 537 F.2d at 61 (statements possessed by the F.B.I. are considered to be in the possession of the prosecutorial arm

---

**8.** Appellant did not suggest in either the trial court or on appeal that the Assistant State's Attorney ever had physical possession of the statements of Officers Hooper and Smith.

of the federal government). In contrast, if there is no evidence that the two entities are working in tandem, the State cannot be deemed to have constructive possession of any documents in the other entity's control. *See Bruce v. State,* 318 Md. at 726, 569 A.2d 1254; *see also United States v. Moeckly,* 769 F.2d 453, 463 (8th Cir.1985)(Jencks Act does not apply to statements made to state officials when there is "no joint investigation or cooperation with federal authorities"), *cert. denied,* 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986).

The Court of Appeals in *Bruce,* 318 Md. at 726, 569 A.2d 1254, ruled, in a case examining the Jencks-*Carr* rule, that statements made by a witness to police officers in New York did not have to be turned over to defense counsel by the Maryland prosecutor. The Court pointed out that several federal decisions have held that " 'statements' in possession of state authorities are not 'in possession of the United States.' " *Id.* at 725–26, 569 A.2d 1254.

We acknowledge that frequently two completely separate entities, such as a police department and the State's Attorney's Office, work in tandem to prosecute a defendant. *See Butler,* 107 Md.App. at 360, 667 A.2d 999. For example, in *Butler,* 107 Md.App. at 359–60, 667 A.2d 999, we held that because the local police department had worked in close coordination with the F.B.I., the report of the F.B.I. agent should have been turned over to the defense. Similarly, when the crime fighting arm of the local police department works with the State's Attorney's Office to prosecute a crime, police reports developed by the police for prosecutorial purposes must be turned over to the defendant under Jencks-*Carr. See id.* at 360, 667 A.2d 999.

The document sought by appellant was not prepared for prosecutorial purposes. When the Internal Affairs Division of the police department conducts an investigation into a shooting by one of its officers, it is not acting in conjunction with the prosecutorial arm of the government. The aim of the investigation is not to bring criminal charges against the

officer(s) or anyone else. Rather, the Internal Affairs Division's goal is to ensure that the county police department's procedures regarding use of firearms are being followed to the letter.

In the instant case, there is no evidence in the record of cooperation or interface between the Internal Affairs Division of the Prince George's County Police Department and the Office of the State's Attorney. There was no proof that the prosecutor could get the document from the police department upon request. It was only after the trial judge demanded that the statement be made available to him in chambers that the Assistant County Attorney turned the statement over to the court for its *in camera* review.

■ Because Officer Hooper's statement was confidential under State law, prepared for non-prosecutorial purposes, and held by a division of the police department that was not working in conjunction with the prosecutor, the State did not have possession of the document under the Jencks-*Carr* rule.[9]

---

9. When dealing with the government's failure to turn over exculpatory *Brady* type evidence, it would not matter that the prosecutor did not know that other governmental agents possessed such evidence. *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842 (4th Cir., 1964). Barbee was charged with the shooting of Donald Fisher, a Baltimore police officer. *Id.* at 843. At his trial, three witnesses were shown a 32 caliber revolver, which Barbee admitted he owned. *Id.* at 843–44. These witnesses were unable to identify the revolver positively, but all said it was "similar" to the one used by the gunman who shot the officer. *Id.* Unbeknownst to the prosecutor, or Barbee's trial attorney, the police had performed ballistic tests on Barbee's gun that proved it was not the weapon used in the shooting of Officer Fisher. Barbee was convicted, but in post-conviction proceedings the ballistic reports came to light and the Fourth Circuit Court of Appeals ruled that Barbee was entitled to a new trial. The Court said:

> Nor is the effect of the nondisclosure neutralized because the prosecuting attorney was not shown to have had knowledge of the exculpatory evidence. Failure of the police to reveal such material evidence in their possession is equally harmful to a defendant whether the information is purposely, or negligently, withheld. And it makes no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure. If the police allow the

## II.

Appellant argues that the trial judge erred when he, *sua sponte,* told the jury that 1) the Internal Affairs Division of the police department had cleared the two officers and 2) there was nothing in the statements of Officers Hooper or Smith that was "exculpatory in this case." Appellant contends that the trial judge's instructions were "tantamount to instructing the jury on the ultimate issue of Mr. Robinson's guilt or innocence," and that the instruction usurped the jury's role of deciding defendant's fate.

Maryland Rule 4–325(e) states:

No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury.

It is a fundamental proposition, "that appellate review of a jury instruction will not [ordinarily] be permitted unless the appellant has objected seasonably so as to allow the trial judge an opportunity to correct the deficiency before the jury retires to deliberate." *Bowman v. State,* 337 Md. 65, 67, 650 A.2d 954 (1994). Before the court gave the instruction about

---

State's Attorney to produce evidence pointing to guilt without informing him of other evidence in their possession which contradicts this inference, state officers are practicing deception not only on the State's Attorney but on the court and the defendant. *'The cruelest lies are often told in silence.'* If the police silence as to the existence of the reports resulted from negligence rather than guile, the deception is no less damaging.

The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused. We cannot condone the attempt to connect the defendant with the crime by questionable inferences which might be refuted by undisclosed and unproduced documents then in the hands of the police. To borrow a phrase from Chief Judge Biggs, this procedure passes 'beyond the line of tolerable imperfection and falls into the field of fundamental unfairness.'

*Id.* at 846 (emphasis added) (footnote omitted).

which appellant now complains, appellant's counsel commented that it was "fine" with him. Consistently, appellant's counsel did not thereafter object to the instruction.

Appellant did, however, make a timely objection to the court's later instruction regarding the definition of "exculpatory." Appellant asserts that his objection to the definition of exculpatory was broad enough to preserve for our review the issue of the earlier instruction.

Appellant's objection that he did not "think the [c]ourt should give the type of instruction as to exculpatory" is clearly not an objection to the original instruction concerning the results of the internal affairs investigation. Rule 4–325(e) requires that a party object "promptly" and state distinctly the "matter to which the party objects and the grounds for the objection." Appellant failed to do either.

Appellant further argues that, under *Gore v. State*, 309 Md. 203, 209, 522 A.2d 1338 (1987), he substantially complied with Rule 4–325(e). In *Gore*, the Court of Appeals explained that, to comply substantially with Rule 4–325(e),

> there must be an objection to the instruction; the objection must appear on the record; the objection must be accompanied by a definite statement of the ground for objection unless the ground for objection is apparent from the record and the circumstances must be such that a renewal of the objection after the court instructs the jury would be futile or useless.

*Id.* As previously indicated, appellant never made any objection relating to the initial instruction dealing with the internal affairs investigation. Therefore, he did not substantially comply with Rule 4–325(e).

Appellant also argues that, even if his trial counsel did not properly object to the instruction concerning the internal affairs investigation, the trial court's instruction constitutes "plain error" meriting our discretionary review under Rule 4–325(e).

 The plain error doctrine will only be recognized if the court's error deprived appellant of his right to a fair trial. *Rubin v. State,* 325 Md. 552, 588, 602 A.2d 677 (1992). Under Rule 4–325(e), the decision to review and correct plain error lies purely within the discretion of the appellate court. Our discretion is to be exercised only when the error complained of was "compelling, extraordinary, exceptional, or fundamental to assure the defendant a fair trial." *State v. Hutchinson,* 287 Md. 198, 203, 411 A.2d 1035 (1980). In our previous cases, we have emphasized that the plain error exception is "very limited" and that appellate discretion to decline to recognize such error is plenary. *Austin v. State,* 90 Md.App. 254, 257, 600 A.2d 1142 (1992).

Contrary to appellant's assertion, what the trial judge told the jury was not "tantamount to instructing the jury on the ultimate issue of [appellant's] guilt. . . ." The trial judge did not tell the jury that they should believe the officers. He told them that nothing that the officers told internal affairs was exculpatory—from appellant's viewpoint.[10] This is hardly surprising inasmuch as nothing the officers said at trial was helpful to appellant either. In any event, in his instructions at the conclusion of the case, the trial judge told the jury that they were the sole judge of whether any witness should be believed or disbelieved.

 Admittedly, the statement that the police department's Internal Affairs Division had "cleared the two officers" was potentially prejudicial to appellant because the jury could have inferred from this statement that the police department

---

10. Appellant's trial counsel apparently did not believe that what internal affairs found was of any great importance. At one point in his closing argument he said:

[T]here was one statement about the police that was made and they were exonerated. I don't give a rip what the police did in their Internal Affairs—

. . . .

You are the people who are meant to judge this case, not anybody else. . . . You were picked from the community, twelve people at random and not somebody on the police force or anything like that.

investigators believed the officers when they said they fired at appellant only in self-defense. The ultimate outcome of this case, however, proves that there was no possibility of actual prejudice to appellant even if such an inference was drawn by the jury. Appellant was not convicted of any crime concerning the police officers' testimony that they shot at appellant because he aimed a gun at them or tried to kill them by attempting to run them down with his Pathfinder. All of his convictions related to crimes committed inside the 7–11 or in the back of the store where store clerk Lang Tuy Luc was robbed. Proof of appellant's guilt of those earlier crimes was overwhelming. He, therefore, was not denied a fair trial. Under these circumstances, we decline to exercise our plenary discretion to entertain the merits of appellant's complaints regarding the portion of the court's instructions to which no objection was made. *Stockton v. State,* 107 Md.App. 395, 398, 668 A.2d 936 (1995), *cert. denied,* 342 Md. 116, 673 A.2d 707 (1996).

██ The appellant also objects to the court's instruction in which it defined "exculpatory." We find no error in the trial court's statement that exculpatory means "in the legal sense ... free from guilt. It's the opposite of guilty." The definition was accurate.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**